## Miller's Petition.

Argued March 12, 1935.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Wickersham & Wickersham,* for appellant.

*Samuel Levin* and *Louis Gordon,* for appellee.

OPINION BY PARKER, J., October 2, 1935:

A judgment in the sum of $505.65, based upon a
verdict recovered in an action of trespass for the negli-
gence of an employee of the petitioner in the operation
of a truck, was entered against the defendant and a
capias ad satisfaciendum was issued and executed,
whereupon the defendant presented a petition for dis-
charge from imprisonment. The petition having been
refused by the court below, this appeal was taken.

The petitioner, in his application for discharge, set
forth that he had no assets; that his only indebtedness
was to the plaintiff to whom he owed $505 with interest
and costs, and one other claim of eighteen dollars; that

he received sixty dollars a month from a spendthrift trust held for the benefit of himself and family; and that he was not able to earn sufficient by his own efforts even with the income from such trust fund to support his family.

The court below, after hearing, refused the petition for the reasons that the petitioner had stated "at the time of the trial, that he would rather sit in jail than pay the judgment," that he had made no effort to secure work but was contented "to live on the amount received from the spendthrift trust, all indicating a mental attitude that he intends to completely ignore the verdict." The appellant contends that it was mandatory on the court to order his discharge and, even if such action was not mandatory, the court abused its discretion in refusing the petition.

The main contention of the appellant is that the court below decided the case without reference to the Act of June 16, 1836, P. L. 729, §17 (39 PS 257), and more particularly, that the petitioner was not in custody by virtue of process issued upon any judgment obtained against him in an action founded upon actual force (Doescher's Petition, 18 Pa. Superior Ct. 346). It is not necessary to enter into a discussion as to whether, under the Act of 1836, the petitioner would have been entitled to a discharge, for that act was specifically repealed by the Act of June 4, 1901, P. L. 404, §42. (Sections 42 to 45, inclusive, were repealed by the Act of March 31, 1860, P. L. 427). It is true that the Act of 1901 was rendered partially inoperative by the Federal Bankruptcy Act of 1898, but it has been consistently held that state legislation on bankruptcy or insolvency is suspended by the passage of the Federal Bankruptcy Act only insofar as it conflicts with the federal statutes: Sturges v. Crowninshield, 17 U. S. 122; Ogden v. Saunders, 25 U. S. 213. As to matters not within the scope of the Federal Bankruptcy Law, the law relating

to insolvency is not affected but remains in full force and effect: Miller v. Jackson, 34 Pa. Superior Ct. 31; Rittenhouse's Insolvent Estate, 30 Pa. Superior Ct. 468; Citizens Nat. Bank v. Gass, 29 Pa. Superior Ct. 125; Hoover v. Ober, 42 Pa. Superior Ct. 308. If the entire Act of 1901, with the exception of the repealing clause, had been in conflict with the federal act, it might well have been argued that the repealing clause would have been inoperative. We may therefore dismiss from consideration the argument of appellant based on the Act of 1836.

There are two acts of assembly now in force in this Commonwealth containing provisions intended for the relief of insolvents who may be arrested or held in custody by virtue of process issued on a judgment in tort. The Act of June 4, 1901, P. L. 404 (39 PS 151), is a general insolvency act and, as we have seen, is in force in this state insofar as it is not in conflict with the Federal Bankruptcy Act. If the averments of the petition are to be taken as true, the entire indebtedness of the petitioner is less than one thousand dollars and the federal act does not apply: Landis Mach. Co. v. Cooper, 53 Pa. Superior Ct. 416. By the fifth section of the Act of 1901, as amended by Act of June 9, 1911, P. L. 728, (39 PS 4, et seq.), it is provided that any person arrested on civil process "may make an assignment for the benefit of his creditors in the manner herein [therein] set forth," and may present his petition to the court issuing the same accompanied by certain schedules and praying for a rule to show cause why he should not be discharged from arrest. The act then provides for notice of the rule, publication, affidavit of service, etc. Upon the hearing on the rule before the court, if it appear that the petitioner has assigned all his property for the benefit of his creditors, that he has not violated any of the provisions of the act, and that all claims against him would be discharged by the creditors

accepting a dividend, "the court shall forthwith discharge him from arrest," and he shall not be liable to arrest in the same proceeding. "If, however, he shall refuse to answer relevant questions, or to produce his books and papers, or it shall appear that he has violated any of the provisions of this act, or that any of the claims against him would not be discharged by the creditors accepting a dividend ...... he shall be discharged from arrest only upon undergoing such imprisonment not exceeding ninety days, as the court shall require." These sections dealing with discharge from imprisonment are in no way in conflict with the Federal Bankruptcy Act. It will be observed that in order that this remedy may be available the petitioner must have made an assignment for the benefit of his creditors, he shall not have violated any of the provisions of the insolvency act, and all claims against him must be discharged by the creditors accepting a dividend. In the case at bar no assignment was made for the benefit of creditors, and it does not appear that any debts would be discharged by the proceeding. The petition, therefore, cannot be sustained under the Act of 1901.

Apparently recognizing the fact that insolvent debtors were frequently without means or property and that an assignment in such case would serve no purpose, the Act of June 1, 1915, P. L. 704 (39 PS 9), was passed. This statute provides a procedure similar to that contained in the Act of 1901 except that any person arrested or held in custody, on or by virtue of any process issued on a judgment obtained in any civil action in this Commonwealth, without making an assignment, may present his petition to the court, or any law judge thereof, out of which the process issues, praying for his discharge from arrest. The fourth section of that act provides (39 PS 12): "Upon the hearing of the rule the petitioner shall be required to answer all questions put to him, and shall produce all books

and papers required of him; and if it shall appear to the court that the petitioner is without means or property with which to pay the judgment, and that he has not secreted or assigned any of his property so as to avoid the payment of the judgment, the court may discharge him from arrest and in said proceedings; but such discharge shall not in any way affect the judgment entered against him. Any person arrested or held in custody on or by virtue of, any process issued on a judgment obtained in any civil action in this Commonwealth, shall be discharged at the expiration of sixty days from the date of the commitment, if compliance is had with all the requirements of this act and all other acts of assembly relating to insolvency."

The Act of 1901 is available to those persons imprisoned for a civil debt who have made an assignment for the benefit of creditors and have not violated any of the provisions of the insolvency act, while the Act of 1915 is for the benefit of all persons who are without means or property with which to pay the judgment and have not secreted or assigned any of their property so as to avoid the payment of the judgment. It is clear that the court below was correct in assuming that the present petition was presented under the Act of 1915.

The Act of June 4, 1915, has been considered on several occasions by this court. In Petition of John Ostrowske, 79 Pa. Superior Ct. 311, the appeal was from an order discharging one held on a capias ad satisfaciendum issued on a judgment obtained in a case of trespass for false arrest and imprisonment. We there said (p. 314) : "The defendant may be discharged at any time if he impresses the court by a presentation of facts as provided by the act. The court, however, may exercise its discretion and no doubt may consider the character of the action which resulted in the judgment but after sixty days have expired, if the defendant complies with the law he is entitled to his discharge.

Before the expiration of sixty days it is a matter of grace, after that it is a matter of right." While the last sentence was in part obiter, in the case of Matz v. Haug, 80 Pa. Superior Ct. 583, the appeal was from an order refusing to discharge a prisoner held on a capias, executing a judgment obtained for criminal conversation, and there it was definitely held that "may" should not be construed as "shall" and what was obiter in the Ostrowske case was adopted as the law essential to the decision in the Matz case. Again, in the case of DeTurk v. Gackenbach, 96 Pa. Superior Ct. 38, the question was whether the court abused its discretion in refusing to discharge an appellant from arrest upon a capias ad satisfaciendum where the process was issued upon a judgment rendered in an action of trespass to recover damages for deceit in falsely, fraudulently and knowingly misrepresenting the value of certain chattels. We again held that the right to discharge before the expiration of sixty days was a matter of grace and not of right.

Is the petitioner entitled to a discharge? In the cases in which we have heretofore considered the Act of 1915, the 16th section of Article I, part of the Declaration of Rights of the Constitution of this Commonwealth, was apparently not taken into account. It is there provided: "The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be prescribed by law." In passing the Act of 1901 the legislature had in mind this constitutional provision, for it made the granting of a discharge mandatory, even before sixty days had expired, where there was a compliance with the provisions of that insolvent law. The Acts of 1901 and 1915, insofar as they relate to petitions for discharge, are intended to accomplish the same purpose. The one act is available where the debtor has property

and the other act provides for discharge of debtors who have neither means nor property to pay the judgment, and it would be a vain thing to make an assignment. It would seem to follow, if effect is to be given to the spirit of the constitutional provision, that a debtor who otherwise brings himself within the provisions of the Act of 1915, the insolvent law involved, is entitled to the same consideration as one who, although he may have only a negligible amount of property, has assets to assign. In either case, if the applicant complies with the particular statute he is complying with the insolvent laws of the state and delivering up such estate as he has. In other words, if a debtor is without means or property with which to pay the judgment, has not secreted or assigned any of his property, follows the procedure prescribed by the first three sections of that act, and there is not a strong presumption of fraud growing out of either the transaction which formed the basis of the judgment or the proceedings for discharge, he is entitled under the constitution of this Commonwealth to a discharge without waiting sixty days.

Viewing the controversy from another angle, we arrive at the same conclusion. While in Matz v. Haug, supra, and other cases construing this act we have said that before the expiration of sixty days, the right of one imprisoned for a civil debt to a discharge is a matter of grace, this means that it is a matter of judicial discretion under the law and the facts. We have not found a better description of judicial discretion than that given by Chief Justice MARSHALL in the case of Osborn v. Bank of U. S., 22 U. S. 738, 866: "Judicial power, as contra-distinguished from the power of the laws, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned,

it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature; or, in other words, to the will of the law." Also, see Augustine v. Wolf, 29 Pa. Superior Ct. 336.

Legislation in this Commonwealth has shown a decided trend away from affording to a creditor the remedy of imprisonment as a means of enforcing collection of judgments in civil actions. By the Act of 1836, where the judgment was not one in an action founded upon actual force or upon actual fraud or deceit, for libel or slander, malicious prosecution, conspiracy, seduction, or criminal conversation, the defendant was entitled to a discharge without serving a minimum period of imprisonment. This was followed by a provision of the Constitution of 1838, the same as that contained in the present constitution to which we have referred. The Act of 1901 makes it mandatory upon the court to discharge one imprisoned for a civil debt where he has made an assignment for the benefit of creditors and it appears that he has assigned all his property, has complied with and has not violated any of the provisions of the insolvency act, and that all claims against him would be discharged by creditors accepting a dividend.

We deem the reasons assigned by the court below for its action insufficient. Even under the Act of 1836 this petitioner would have been entitled to a discharge without undergoing confinement for a minimum term, for the tort which formed the basis of the action in which the judgment was recovered was not founded upon actual force: Doescher's Petition, supra. If the reasons here assigned were sufficient to support the order of the court, it would be in rare instances that a defendant in any action in tort for negligence might not, at the will of court, be compelled to serve a minimum term of

sixty days. To so hold would reverse the whole policy of the law. To refuse the petition is an exercise of the will of the judge rather than the settled policy of the Commonwealth as expressed in its constitution and by the legislature.

This appeal was presented to us in forma pauperis and it is impossible, from the paper books, to determine whether the petitioner has complied with the jurisdictional provisions of the Act of 1915, but no such question has been raised before this court. We will therefore assume that the proceedings are regular and that no other reasons in support of the order exist.

The order discharging the rule is reversed, and it is directed that the rule be made absolute and the prisoner discharged.