### In re KENVAL MARKETING CORPORATION, Debtor.

**Bankruptcy No. 83–02723G.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 31, 1984.

Marvin Krasny, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for debtor, Kenval Marketing Corp.

## 446

Jay G. Ochroch, Shelley V. Sodomsky, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Larry Waslow, Assignee for Benefit of Creditors.

Leonard J. Cook, Roger F. Wood, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for petitioning creditors, Churny Co., Inc., Cher-Make Sausage Co. and D.S. Stauffer Biscuit Co., Inc.

### OPINION

EMIL F. GOLDHABER, Bankruptcy Judge.

The question before the bench is whether we should grant a motion filed by the debtor, in which the assignee for the benefit of creditors joins,[1] to vacate our recent order granting relief on an involuntary petition against said debtor. The motion is predicated, in part, on the assignee's allegation that the trustee will not be able to assert successfully the preference avoiding powers that could have been pressed by the assignee had relief on the petition not been granted. For the reasons expressed herein we will deny the motion.

Although we previously stated the facts in our original opinion on this case,[2] we will reiterate them here for the sake of continuity and clarity.[3] The debtor executed an assignment for the benefit of its creditors on March 8, 1983. Four months later, on

July 6, 1983, three qualified creditors, to whom was owed 72% in amount of the claims against the debtor, filed an involuntary petition for relief against it under chapter 7 of the Bankruptcy Code ("the Code"), charging that the debtor, after the assignment, "was generally not paying such debtor's debts as such debts became due" in accordance with the standard set forth in § 303(h)(1) of said Code. During the four month period prior to the assignment, the debtor made substantial payments to each of the petitioning creditors for a total of $347,000.00. More than four months prior to the assignment, but not more than one year prior to the filing of the petition, the debtor had made transfers of $275,000.00 to its president and his family and during this time the debtor also satisfied a $735,000.00 loan that was guaranteed by the debtor's president. The issue before us arises as a result of the assignee's motion for dismissal of the petition, in which the debtor has joined.

In our original opinion we held that the petitioning creditors had established a prima facie case for the entry of relief under 11 U.S.C. § 303(h),[4] which conclusion is not challenged in the motion for reconsideration. But the debtor has renewed its assertion that this is a proper case for abstention under 11 U.S.C. § 305.[5] The legisla-

---

1. Following the recitation of facts, *infra,* we will collectively refer to the debtor and the assignee as "the assignee."

2. *In Re Kenval Marketing Corp.,* 38 B.R. 241 (Bkrtcy.E.D.Pa.1984).

3. The opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

4. Section 303(h) states as follows:
 (h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
 (1) the debtor is generally not paying such debtor's debts as such debts become due; or
 (2) within 120 days before the date of the filing of the petition, a custodian, other than a

trustee, receiver or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

5. Section 305 states as follows:
 § 305. Abstention
 (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time, if—
 (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; or
 (2)(A) there is pending a foreign proceeding; and
 (B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.
 (b) A foreign representative may seek dismissal or suspension under subsection (a)(2) of this section.

tive history of this section provides some illumination with the following language:

A principle of the common law requires a court with jurisdiction over a particular matter to take jurisdiction. This section recognizes that there are cases in which it would be appropriate for the court to decline jurisdiction. Abstention under this section, however, is of jurisdiction over the entire case. Abstention from jurisdiction over a particular proceeding in a case is governed by proposed 28 U.S.C. 1471(c). Thus, the court is permitted, if the interests of creditors and the debtor would be better served by dismissal of the case or suspension of all proceedings in the case, to so order. The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court workout may better serve the interests in the case. Likewise, if there is pending a foreign proceeding concerning the debtor and the factors specified in proposed 11 U.S.C. 304(c) warrant dismissal or suspension, the court may so act.

Subsection (b) gives a foreign representative authority to appear in the bankruptcy court to request dismissal or suspension. Subsection (c) makes the dismissal or suspension order nonreviewable by appeal or otherwise. The bankruptcy court, based on its experience and discretion is vested with the power of decision.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 325 (1977), *reprinted* in 1978 U.S.Code

Cong. & Admin.News 5787, 6281–82. Although § 305(c) clearly provides that an order denying abstention is not reviewable, the continued vitality of this bar to appellate review is subject to some uncertainty in the wake of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and the "Emergency Rule" which was adopted by the federal district courts across the country in December of 1982 to preclude a complete lapse of the bankruptcy court's jurisdiction. Notwithstanding these issues, the legislative history indicates that the bankruptcy court should abstain only on the basis of its informed discretion, and thus, if such an order is now appealable, it may be overturned only on the basis of an abuse of discretion. Apparently § 305(c) will not bar us from reconsidering our own order.

The debtor asserts two bases for vacating our order for relief, the first of which is based on the following language from our prior opinion:

The assignee asserts that he will be able to avoid transactions amounting to $347,-000.00 made within the fourth month vulnerability period provided by state law, although said transfers occurred more than ninety days prior to the filing of the involuntary petition and thus ostensibly are not avoidable under 11 U.S.C. § 547(b) of the Code. *But see*, 11 U.S.C. § 544(b).

*Kenval*, at 244–245. In obliquely referring to § 544(b)[6] we were alluding to the possibility that the trustee may be able to assert the same avoiding powers under this provision as the assignee. The assignee asserts that *Copter, Inc. v. Gladwin Leasing, Inc.*, 725 F.2d 37, 39 (3d Cir.1984) precludes a trustee from utilizing state law avoidance powers through § 544(b). In *Copter* the

(c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise.

**6.** Section 544(b) is cast in the following language:

(b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

court construed Pa.Stat. Tit. 39, § 151[7] which states that if a debtor is insolvent or in contemplation of insolvency a preference made to one of his creditors shall inure to the benefit of all creditors if, within four months after such preference, insolvency proceedings are commenced or if an assignment for the benefit of creditors is made.

■ The court in *Copter* held that the filing of a petition for relief was not sufficient to trigger the applicability of § 151. The court expressed its rationale in the following language:

As the district court properly recognized, the Pennsylvania legislature was referring to state insolvency proceedings when it addressed voidable preferences in section 151. References throughout the Insolvency Act indicate that the reference to "proceedings in insolvency" in section 151 was intended to incorporate the state insolvency procedure set forth in 39 Pa.Stat.Ann. § 31; there is no indication that section 151 referred to federal bankruptcy proceedings. See 39 Pa. Stat.Ann. §§ 31, 151, 152. Moreover, there had been no assignment for the benefit of creditors, nor had a state court insolvency proceeding commenced. (Footnote omitted).

725 F.2d at 39. Thus, *Copter* is not authority for the applicability of § 151 in bankruptcy proceedings when, prior to the filing of the petition, an assignment for the benefit of creditors has been made or insolvency proceedings have been commenced. Unlike *Copter*, in the case at bench there has been an assignment for the benefit of creditors. The situation at bench is governed by *First*

*National Bank of Delta, Pennsylvania v. Weaver* (In Re McElwain), 296 F. 112 (3d Cir.1924), which is quoted approvingly in *Copter*. In that case the debtor had confessed judgment in favor of one of his creditors, and within four months thereafter insolvency proceedings were commenced against him under the laws of the state of Pennsylvania, with a view of setting aside the judgment as a preference. Shortly after the debtor was adjudged insolvent by the state court and after the lapse of more than four months from the confession of the judgment the debtor filed his petition in bankruptcy hoping thereby to avail himself of the time limitation and also to avoid the operation of the state insolvency law already set afoot. The court held that the trustee in bankruptcy was subrogated to the rights of creditors obtained by the institution of the insolvency proceedings in the state court and might enforce same to invalidate the confession of judgment, although the proceedings in the state court were held to be superseded by the proceeding in bankruptcy, and although the judgment, having been confessed more than four months prior to bankruptcy, could not have been avoided under the provision of the Bankruptcy Act itself. Judge Buffington, speaking for the court, said:

[T]he Pennsylvania Insolvency Act is ... in harmony with the policy of the Bankruptcy Act and in aid of its purpose. * * *

It will thus be seen the state act in question is not a bankruptcy act, but one of insolvency administration, and while all proceedings thereunder are, of

---

7. Section 151 reads as follows:

§ 151. Preferences inuring to benefit of all creditors

If any person, persons, form, limited partnership, joint-stock company or corporation, being insolvent or in contemplation of insolvency, with a view to give a preference to any creditor or person having a claim against, or who is under any liability for, such insolvent, shall procure, suffer or permit any judgment to be entered, by confession or otherwise, or any execution to be levied, or any attachment or sequestration to be made of any part of his, their or its real or personal property, or shall make any payment, pledge, assignment, transfer, conveyance or encumbrance thereof, ci-

ther absolutely or as collateral security for a debt then existing, whether due or not, such judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or encumbrance shall inure to the benefit of all the creditors of such insolvent, if an assignment for the benefit of creditors be made or proceedings in insolvency be commenced within four months after such judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or encumbrance shall have been entered, issued, commenced, made or recorded, and in the case of personal property exclusive possession given. 1901, June 4, P.L. 404, § 1.

course, superseded when a bankrupt [sic] proceeding is begun, yet there is no reason why the bankrupt [sic] court should not avail itself of the status and proceedings then existing in the state court proceeding where such status or proceedings may aid in the administration by the bankruptcy court, of the bankrupt's property. This view of the state act finds support in cases, federal and state, in Pennsylvania.

296 F. at 114. Consequently, the avoidance powers that the assignee could have asserted under § 151 may now be utilized by the trustee. Thus, the assignee's first basis for reconsideration is without merit.

 As the second basis for reconsideration the assignee quotes from our original opinion the following language:

> The petitioning creditors contend that transfers in excess of $1,000,000.00 were made to insiders of the debtor within one year of the filing of the involuntary petition, which would be avoidable under bankruptcy law although not avoidable under state law. *See, e.g., Goldberger v. Davis Jay Corregated Box Corp.,* (In Re Mercon Industries, Inc.) [37 B.R. 549] (Bankr.E.D.Pa.1984).

In *Davis Jay* we faced a situation in which the debtor satisfied a debt owed to a creditor who was not an insider although payment was made more than 90 days prior to the commencement of bankruptcy but within the one year vulnerability period for insiders. The trustee in *Davis Jay* contended that since the debt was guaranteed by insiders, the release of contingent liability as to them was an avoidable transfer. The assignee asserts that *Davis Jay* is distinguishable from the case at bench since in the case before us the debts satisfied within the one year vulnerability period were allegedly secured. We need not address this alleged distinction at this time since the assignee has not pointed in his brief to any evidence of record supporting the existence or extent of the purported security interest or the value of the collateral it encumbered.

 The assignee has asserted his request for abstention as a defense to the creditors' involuntary petition for relief, and since the creditors have made a prima facie showing for relief, the debtor must bear the burden of proving its entitlement to abstention. The essence of the difficulty in the matter at hand is that our decision to abstain must necessarily be grounded on the expected outcome of preference actions which have yet to be commenced or tried. From our perspective it seems unwise to burden a preliminary proceeding requiring prompt attention, such as a hearing on an involuntary petition, with the obligation to try ancillary preference actions to determine if we should abstain from ordering relief. Too often a debtor wishing to delay the inevitable may answer an involuntary petition with seemingly colorable, but ultimately frivilous bases for abstention. Nonetheless, we have duly pondered the assignee's bases for abstention, both initially and now on the motion for reconsideration, and we hold that abstention would be inappropriate. Accordingly, we will enter an order denying the motion for reconsideration. This result renders it unnecessary to reach the other contentions raised by the assignee.